# In the United States District Court for the Southern District of Georgia Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 JAN 19 P 3:01

CLERK
_____
S.D. OF GA.

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | CRIMINAL ACTION |
| v. | : | |
| GENE MIDDLETON, | : | |
| Defendant. | : | NO. CR205-025 |

### O R D E R

A jury convicted Gene Middleton of possessing a firearm as a convicted felon, in violation of the law. 18 U.S.C. § 922(g)(1). Presently before the Court is Middleton's motion for a judgment of acquittal or, in the alternative, a new trial. Because there is substantial evidence justifying an inference of guilt, Middleton's motion for acquittal will be **DENIED**. Because the verdict was not contrary to the weight of the evidence, Middleton's motion for a new trial will be **DENIED**.

AO 72A
(Rev. 8/82)

**BACKGROUND**

Department of Natural Resources Ranger, Bobby White, received a tip that Middleton was operating a coyote trap on land owned by Herman Morris in Long County, Georgia. On February 22, 2005, White staked out the premises to determine whether the owner of the trap had a right to trap on the land. While on the scene, White witnessed Middleton approach the trap in a pickup truck with his adult son, Joseph Middleton. When Defendant began to tend to the trap, White approached Gene Middleton and asked him for his driver's license and trapping permit, which Gene Middleton produced. White then peered into the vehicle and saw a .22 Marlin rifle between the front seats. While holding Defendant's license, the ranger asked Gene Middleton who owned the rifle. Defendant stated that he owned the gun.

Prior to the trial, Middleton stipulated that he had been convicted of a felony before this incident occurred. According to a stamp on the gun, as well as the testimony of federal agent Mark Ratliff, the Government's firearm expert, the .22 Marlin rifle was manufactured in Connecticut.

At trial, Middleton alleged that the rifle belonged to his brother, Robert Middleton. According to Defendant's theory of

AO 72A
(Rev. 8/82)

the case, Robert Middleton had given Defendant the pickup truck as a gift, and inadvertently had left the weapon behind the seat of the truck.

Defendant has also asserted that his son, Joseph Middleton, actually possessed the gun on the day in question. According to Defendant's theory of the case, he brought his son along to act as the "dispatch person," to kill any wild animal that may have been caught in the trap he had set. Defendant averred that his son was the person who handled the gun, and contended that he was not guilty of possessing the gun so long as there was another person who had "equal access" to the weapon.

## STANDARD FOR GRANTING A JUDGMENT OF ACQUITTAL OR A NEW TRIAL

Under Rule 29(a) of the Federal Rules of Criminal Procedure, "[a]fter . . . the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

Judge Prettyman explained the standard to be applied as follows:

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of

acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

<u>Curley v. United States</u>, 160 F.2d 229, 232-33 (D.C. Cir. 1947).

Pursuant to Federal Rule of Criminal Procedure 33, upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."

The Court has broader authority to order a new trial than it possesses on a motion for a judgment of acquittal. In considering a motion for a new trial, the Court "may weigh the evidence and consider the credibility of the witnesses." 3 Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 553 (3d ed. 2004).

In exceptional cases, the Court may set aside the verdict and order a new trial where the evidence weighs heavily against

AO 72A
(Rev. 8/82)

the verdict. United States v. Sinclair, 438 F.2d 50, 51 n.1 (5th Cir. 1971).[1]

## DISCUSSION

Middleton urges several grounds in support of his motion attacking the jury's verdict. First, Defendant asserts that the Court erred in admitting certain incriminating evidence against him. Second, Middleton complains that there was not a sufficient connection with interstate commerce to sustain the conviction. Third, Defendant maintains that the prosecution failed to prove that he possessed the rifle in question. Fourth, Middleton posits that his prior convictions would have been inadmissible to impeach his testimony. Fifth, Defendant contends that the Court erred in instructing the jury.

### I. The Court Did Not Err in Refusing to Suppress Middleton's Incriminating Statements and the Firearm from Evidence

Prior to trial, U. S. Magistrate Judge James E. Graham entered a report and recommendation, which found that a reasonable man would have believed that he was restrained in

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

5

his freedom of movement when Ranger White seized Middleton's driver's license and trapping permit. Dkt. No. 24. Because Middleton had not been informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), Judge Graham found that White's questioning of Middleton violated Defendant's Fourth and Fifth Amendment rights, necessitating the suppression of Middleton's incriminating statements. Judge Graham concluded that, because a reasonable man would not have felt free to leave, White's questions regarding ownership of the gun were conducted in a custodial setting.

Middleton faults the Court for overruling the Magistrate Judge's finding by admitting Middleton's statements into evidence. Further, Defendant argues that the Court erred in failing to exclude the .22 rifle from evidence, in that there was no basis for White to seize the rifle except based on Middleton's statements.[2]

The Government rejoins that the Magistrate Judge's finding was in error. According to the United States, the facts found by Judge Graham were analogous to a traffic stop, wherein an officer observes what he believes to be a violation of the

---

[2] Judge Graham determined that the rifle was admissible into evidence because it was located within White's plain view.

traffic laws (or here, a trapping violation), stops the motorist, and in the course of disposing of that matter, makes observations that give rise to a suspicion that additional or other crimes may have been committed by the suspect. The Court agrees.

White was investigating whether the operator of the trap had written permission to operate the trap on Morris' land, and the ranger witnessed Middleton approach the trap. Based on White's familiarity with Middleton, the ranger believed that Middleton was a convicted felon. Upon viewing the gun, White had a reasonable basis on which to conclude that Middleton may have been guilty of possessing the weapon as a convicted felon. It is immaterial that White did not witness Middleton holding the firearm.

As the Government argues, and as the Court found by admitting Middleton's statements into evidence, White had sufficient evidence to justify a brief detention and inquire into these circumstances. Terry v. Ohio, 392 U.S. 1 (1968). The questions the ranger asked were brief and to the point: White asked Middleton if he was a convicted felon, inquired whether Middleton's rights had been restored, and asked who

7

owned the gun.  The Court does not find that this brief line of questioning was unlawful under Miranda.

No Miranda warnings are required to legitimize a Terry stop, even though the suspect is not free to leave during the brief detention.  Pursuant to Terry, a law enforcement official may stop a person based upon reasonable suspicion of criminal activity, and ask a sufficient number of questions to confirm or dispel the officer's suspicions.  The detainee need not respond, and unless the officer has probable cause to make an arrest, the person must be released.  See, e.g., United States v. Pelayo-Ruelas, 345 F.3d 589, 591-93 (8th Cir. 2003); United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004).

In sum, Ranger White's questions were limited in time and scope, and Middleton's responses to these queries gave White probable cause to arrest Middleton.  See also Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (a single police officer asked respondent a modest number of questions. . . . Treatment of this sort cannot fairly be characterized as the functional

AO 72A
(Rev. 8/82)

equivalent of formal arrest.").[3] Middleton's statements, and the rifle, were admissible into evidence.

## II. A Sufficient Nexus With Interstate Commerce Existed

Next, Middleton argues that the Government failed to prove that he possessed the weapon in interstate commerce, or that his possession of the weapon affected interstate commerce.

Yet, so long as the weapon has traveled in interstate commerce in the past, the minimal nexus exists to support federal jurisdiction over the crime. This is true even where the defendant did not carry the weapon across a state line personally. United States v. Bass, 404 U.S. 336, 350 (1971); United States v. Scott, 263 F.3d 1270, 1272-74 (11th Cir. 2001). The Government submitted sufficient evidence for the jury to determine that the gun was manufactured in Connecticut.[4]

---

[3] After Defendant gave incriminating responses to the ranger's questions, White acted as any reasonable officer would, by ordering Middleton to the sheriff's office. The fact that White kept Middleton's license during the commute to the sheriff's office has no bearing on the constitutionality of the stop and inquiry. Middleton had already incriminated himself at that point, and the ranger's detention of his license thereafter did not change the character of the encounter.

[4] Defendant also suggests that the Court erred in overruling Defendant's objection to the testimony of Ratliff that the gun was manufactured in Connecticut. Middleton asserts that this was inadmissible
(continued...)

### III. There Was Sufficient Evidence of Possession to Sustain the Conviction

Middleton also maintains that he is entitled to a judgment of acquittal because the Government failed to prove by competent evidence that Middleton possessed the weapon. However, as Middleton concedes, there was evidence that Middleton admitted that he owned the gun. There was also evidence that the rifle was leaning between the two front seats in Middleton's pickup truck, and that the officer witnessed Defendant emerge from the driver's seat of that vehicle.

The Court rejects Defendant's argument that the evidence was insufficient to establish possession under the law. The power to take dominion over one's property is fundamental to the concept of ownership. Moreover, Defendant is mistaken in suggesting that only actual, physical possession is prohibited by law. A finding of guilty is also authorized where a defendant constructively possesses the contraband. The fact that Middleton alleged that his brother, Robert Middleton, and

---

[4](...continued)
written hearsay because the agent read this information off the barrel of the rifle. However, Ratliff testified as an expert under Federal Rule of Evidence 702, and it was permissible for him to rely on data made available to him outside of trial in forming his opinion. See Fed. R. Evid. 703; United States v. Hollon, No. 93-1566, 1994 U.S. App. LEXIS 2668 *12 (6th Cir. Feb. 11, 1994).

his son, Joseph Middleton, were the ones who owned and possessed the gun does not entitle him to an acquittal or a new trial. The jury was free to choose between competing views of the evidence.

In other words, it is no defense to argue that another person had an "equal opportunity" to take possession of the rifle. The law recognizes that possession may be exclusive or joint, and a person who has both the power and the intention to later take control over a firearm is in constructive possession of it. United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004).

In this case, it is plain that the jury concluded that Middleton had constructive possession of the rifle, either alone, or with his other family members, Joseph and/or Robert Middleton. The jury was entitled to reach that conclusion based on the evidence presented. United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001)(evidence need not foreclose every reasonable hypothesis of innocence to sustain a conviction).

AO 72A
(Rev. 8/82)

## IV. Middleton's Failure to Testify Waived Any Objection to the Court's In Limine Ruling Regarding His Prior Convictions

Before Defendant testified, Defendant's lawyer and the prosecutor approached the bench for a sidebar conference. The Government explained that if Middleton testified, it intended to present evidence of his prior convictions for the purpose of impeachment. After the Court agreed that it believed the Government would be entitled to do so, Middleton decided not to testify. Middleton maintains that the Court's ruling was in error, and that it violated his right to testify in his own defense.

Yet, Middleton did not preserve this issue for review, and the Court cannot pass judgment on this argument because of Middleton's tactical decision not to testify in his own defense. In <u>Luce v. United States</u>, the Supreme Court held that the accused must testify at trial to preserve the argument that the accused's prior convictions were inadmissible for impeachment purposes under Rule 609. 469 U.S. 38 (1984). Without Defendant's testimony, the Court lacks the full factual context and is not in a position to weigh probative value and prejudicial effect, as is required under Rule 609. <u>Id</u>. at 41. Without knowing the content of Middleton's testimony, the

AO 72A
(Rev. 8/82)

prosecutor's warning at sidebar, and the Court's preliminary ruling, was "wholly speculative." Id.

> A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.
>
> Any possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling. On a record such as here, it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction.

Id. at 41-42; see also Ohler v. United States, 529 U.S. 753, 757-59 (2000).

Because Middleton declined to testify, the Court cannot determine whether evidence of a prior conviction would have been admissible under Rule 609.

13

## V. The Court Did Not Err in Failing to Give Middleton's Requested Charge

Finally, the Court rejects Middleton's assertion that it erred in failing to charge the jury that "mere presence at the scene" was insufficient to convict him of the crime charged in the indictment. The Court did not give this charge because it explained in detail the requirements of the statute and governing law. Before the jury could convict, the Court instructed that it had to find that Middleton <u>knowingly</u> possessed the firearm. The Court described that possession could be exclusive or joint, actual or constructive. Consequently, Middleton's proffered instruction was unnecessary, and may have tended to confuse the jury.[5]

---

[5] Middleton also asserts that the Court erred because the Court's written charge to the jury stated that "[t]he fact that a witness has been convicted of a felony offense, or a crime involving dishonesty or false statement, is another factor you may consider in deciding whether you believe that witness." The Court did not read this portion of the charge, but did send written instructions out with the jury which included this language. The Court notes that it informed the jury that Middleton had a right not to testify, and the Court rejects the notion that this instruction had any negative effect on Middleton, inasmuch as he did not testify in his own defense.

14

**CONCLUSION**

For the reasons explained above, Middleton's motion for a judgment of acquittal, or in the alternative, a new trial, is **DENIED**. See Dkt. No. 54.

**SO ORDERED**, this ____18TH____ day of January, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)